## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS,
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BERTHA L. TOWNSEND, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CAUSE NO. SA-05-CA-1140-OG |
| § | | |
| DR. FRANCIS J. HARVEY, § | | |
| SECRETARY OF THE ARMY, § | | |
| Defendant. § | | |

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is defendant's motion for summary judgment. (Docket no. 27.) For the reasons set out below, the motion will be granted.

Plaintiff challenges her 14-day suspension from federal employment for sleeping on the job and being absent without leave (AWOL) on the grounds of race, age, and gender discrimination, as well as retaliation for prior protected activity. Plaintiff also claims she was subjected to a hostile work environment.

Plaintiff Bertha L. Townsend is a 54-year-old African-American female who was formerly employed as a GS-5 EEO Assistant at the Ft. Sam Houston EEO office. She began working at Ft. Sam Houston in 1989 as a secretary. She was required to leave this job due to a reduction in force, and she transferred to the Judge Advocate General's Office in May 1993. After a little more than two years at the JAG Office, plaintiff requested a transfer after receiving a letter from a supervisor that she abused her sick leave. Plaintiff then worked for a short time at the library and at one other office but had difficulties with both of her supervisors there. Plaintiff began work at the EEO office in November 1995.

Plaintiff initially worked under the supervision of Virginia Dixon, an African-American

female, until April 2001.  In May 1997, Dixon suspended plaintiff for being AWOL and failing to properly request leave.  In April 2001, Arthur Arnold, PhD., became director of the EEO Office. Dr. Arnold, a 55-year-old African-American male, served as plaintiff's first-level supervisor for approximately two years.  During this time, Dr. Arnold and plaintiff had conflicts regarding her attendance and her job performance.

Plaintiff's normal time for reporting for duty was 7:30 a.m. Plaintiff was tardy for work on numerous occasions, partly because she was required to drive her sister's five children to school, and plaintiff requested that her reporting time be changed to 8:00 a.m. Dr. Arnold granted this request, but plaintiff's tardiness problems continued.  Co-workers observed that plaintiff was tardy more than once every week. Dr. Arnold was also regarded as a stickler about punctuality and attendance. Ft. Sam Houston leave regulations required that if an employee was going to be absent or tardy she was required to call in and report to her supervisor not later than two hours after the tour of duty was scheduled to begin. Plaintiff was aware of these requirements for reporting absences to her supervisor.

In view of the numerous attendance problems plaintiff was experiencing and her statements regarding medications impacting her attendance, Dr. Arnold, after consulting with the Civilian Personnel Advisory Center, provided a letter to plaintiff inquiring as to whether she had a need for medical accommodation.  The medical information plaintiff presented to the Army indicated that she could return to work without any limitations.  The Army's occupational physician, Lt. Col. Brian Scott, saw plaintiff on March 3, 2003, and based on the information he had, opined that she was fit for duty.  The only accommodation which any of plaintiff's physicians ever requested was that she be transferred to work for a different supervisor.

Before Dr. Arnold proposed the 14-day suspension that is the focus of this lawsuit, plaintiff received no less than six oral counselings in 2001, a letter of warning for sleeping on duty on December 13, 2001, a formal letter of reprimand for being AWOL and failing to follow leave procedures on June 5, 2002, a written counseling for tardiness on June 21, 2001, and two letters of warning for tardiness on July 22, 2002, and August 2, 2002. On December 4, 2002, plaintiff was issued a Use of Leave Directive for excessive leave usage. Plaintiff was observed sleeping on duty by her co-workers on at least five occasions.

In addition, plaintiff was suspended on Dr. Arnold's recommendation on two occasions before the suspension at issue occurred. Dr. Arnold first proposed that plaintiff be suspended (her second suspension since working at the EEO Office) on July 17, 2002 for being asleep at her desk during duty hours, and Col. Douglas A. Biggerstaff suspended plaintiff for three days by letter of September 4, 2002. Plaintiff did not grieve or otherwise file a complaint regarding this suspension because she acknowledged that she was in fact asleep at work. On September 25, 2002, Dr. Arnold proposed that plaintiff be suspended for being AWOL on six separate occasions, and for being asleep on duty for two occasions. Col. Biggerstaff suspended plaintiff for 14 days by letter of December 5, 2002, based upon these specifications.

Dr. Arnold proposed the 14-day suspension at issue in this case on April 14, 2003. The Notice of Proposed Suspension contained two specifications: (1) that plaintiff was AWOL on February 25, 2003 when she failed to report for duty or request approval of her absence; and (2) that plaintiff was sleeping at her desk during duty hours on March 27, 2003. Plaintiff was aware of her rights to respond to the specifications contained in the Notice of Proposed Suspension, and was served with written notice that she could respond both orally and in writing to the deciding

official, Col. Biggerstaff, who was then the Garrison Commander at Fort Sam Houston.  Col. Biggerstaff is an Anglo-Caucasian male who is currently 51 years old.  Plaintiff presented her oral reply to the charges to Col. Biggerstaff (and the Deputy Garrison Commander Michael Waldrop) on or about April 29, 2003, and her written reply on or about May 28, 2003.  In neither reply did plaintiff present Col. Biggerstaff with specific facts to controvert the two specifications set forth in the Notice of Proposed Suspension. Col. Biggerstaff believed in good faith that plaintiff had committed the specifications charged.  Plaintiff, in fact, admits that she did not come to work on February 25, 2003, nor did she speak to anyone at the EEO Office regarding her absence.  On June 24, 2003, Col. Biggerstaff issued his final decision, suspending plaintiff for 14 calendar days, to be served between July 6-19, 2003.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Id. at 587 (quoting FED. R. CIV. P. 56(e) and adding emphasis).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The inferences to be drawn from the underlying

facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., 475 U.S. at 587 (citations omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (citation omitted).

## DISCRIMINATION/RETALIATION

Defendant argues that plaintiff cannot maintain her discrimination and retaliation claims because: (1) she has no evidence that Col. Biggerstaff discriminated against her; (2) she was suspended for legitimate, non-discriminatory reasons; and (3) she cannot identify any similarly-situated employees outside her protected classifications who received preferential treatment.

The target of plaintiff's claims in this case is Dr. Arnold, her former first-level supervisor. Dr. Arnold, however, was not the decision-maker with regard to the June 24, 2003 suspension. That decision was made by the Garrison Commander, Col. Biggerstaff. Plaintiff has admitted under oath that she does not believe Col. Biggerstaff discriminated against her.  At the October 4, 2004 Fact Finding Conference with the EEO Investigator, plaintiff testified under oath that she did not think Col. Biggerstaff discriminated against her, or that his signing the decision letter was an "act of discrimination."

Plaintiff's only theory of discrimination and retaliation regarding Col. Biggerstaff is that he was "blackmailed" into accepting Dr. Arnold's suspension proposal because if Col. Biggerstaff had made any decision other than affirming the suspension proposal, Dr. Arnold would have "played the race card" against him.  Plaintiff believes that Col. Biggerstaff had "no choice" but to accept the suspension proposal because he was afraid that Dr. Arnold would go to the NAACP if management attempted to take any action against Dr. Arnold since management had failed to take

5

any action against White supervisors. DX-1 at 208-10; DX-2 at 174-78.

Plaintiff's groundless theory is based entirely on hearsay. DX-1 at 208-09; DX-2 at 176. Moreover, plaintiff's theory makes no sense insofar as Col. Biggerstaff as the deciding official had the absolute discretion to accept, mitigate, or reject Dr. Arnold's proposed 14-day suspension without initiating any proposed disciplinary action against Dr. Arnold. In addition, plaintiff has no evidence whatsoever that Col. Biggerstaff was afraid of Dr. Arnold "playing the race card," and Col. Biggerstaff has denied this theory under oath.

As a matter of law, in the absence of any probative evidence that Col. Biggerstaff discriminated or retaliated against her, plaintiff has to establish that Col. Biggerstaff served as the "cat's paw" to validate any alleged discriminatory or retaliatory animus of Dr. Arnold. In cases where the decision-maker "rubber stamps" the firing recommendation of subordinates harboring discriminatory animus toward the plaintiff, the decision-maker acts as a conduit of the subordinates' improper motive. Long v. Eastfield College, 88 F.3d 300, 307 (5th Cir. 1996). See also, Russell v. McKinney Hospital Venture, 235 F.3d 219, 226- 27 (5th Cir. 2000) ("If the [plaintiff] can demonstrate that others had influence or leverage over the official decisionmaker, ... it is proper to impute their discriminatory [or retaliatory] attitudes to the formal decisionmaker.").

Plaintiff has offered no evidence regarding how Col. Biggerstaff made his decision, or even whether Col. Biggerstaff spoke to Dr. Arnold about the suspension proposal before issuing the challenged decision. Plaintiff asserts in her response that Col. Biggerstaff took disciplinary actions against her solely on the word of Dr. Arnold and that Col. Biggerstaff paid no attention to her side of the story "because she was a Poor, Black GS-5 ...." These assertions are completely

unsupported. Plaintiff also cites her exhibit 2, which is apparently the testimony of Maria Preda given at the Fact Finding Conference, for the assertion that Col. Biggerstaff and Dr. Arnold joked and laughed about plaintiff. Exhibit 2 is some 40 pages of testimony, and no citation to the referenced page of this testimony is provided. It is plaintiff's burden to "designate" the specific facts in the record that create genuine issues precluding summary judgment. FED. R. CIV. P. 56. This burden is not met merely by offering the entirety of the discovery in the case. The Court is not required to conduct a fishing expedition through the record in search of a genuine issue of material fact. Enplaner, Inc. v. Marsh, 11 F.3d 1284, 1296 n.16 (5th Cir. 1994); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992); Nissho-Iwai, 845 F.2d at 1307. Nevertheless, the Court has read the 40 pages of excerpts from Ms. Preda's testimony and finds that none of it relates to discrimination or retaliation suffered by plaintiff due to her race, gender, age, or prior protected activity. Specifically, the testimony about the alleged joking does not mention when it occurred, whether it had any connection to the decision to suspend plaintiff, or that the jokes had anything to do with plaintiff's protected status. PX-2 at 155-56. The only competent summary judgment evidence is that Col. Biggerstaff did not blindly accept or rubberstamp Dr. Arnold's suspension proposal; rather, Col. Biggerstaff made a considered, independent decision regarding the propriety of a 14-day suspension under the circumstances. DX-12.

     Defendant also asserts that plaintiff was suspended for legitimate, non-discriminatory reasons. As indicated, the reasons for plaintiff's suspension are that she was AWOL on February 25, 2003 when she failed to report for duty or to request approval of her absence, and that she was sleeping at her desk during duty hours on March 27, 2003. Plaintiff admits that she did not

come to work on February 25, 2003 and did not call in. DX-1 at 138-39, 143.  Nor did plaintiff produce any evidence to Col. Biggerstaff to show that she was not sleeping during duty hours despite having the opportunity to do so.  Col. Biggerstaff had a reasonable, good-faith basis to believe that plaintiff had violated the work rules.  The issue in reviewing an employer's reasons for an adverse employment action is whether the given reasons were a pretext for illegal discrimination.  Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (5th Cir. 1984).  Plaintiff has offered no evidence in her response to even suggest that Col. Biggerstaff's reasons for her suspension were a pretext for either discrimination or retaliation.

Finally, defendant argues that plaintiff cannot show that any similarly-situated employees received preferential treatment.  In order for plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was suspended was nearly identical to that engaged in by an employee outside her protected class who was not disciplined. Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990); see also Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (in a case of termination based on work rule violation, plaintiff must show that the person allegedly similarly situated was treated differently under circumstances "nearly identical" to his); Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000) (to establish disparate treatment claim for age discrimination, plaintiff must show that persons outside the protected class were treated more favorably under "nearly identical circumstances").

In her deposition, plaintiff failed to identify any employees who failed to come to work on February 25, 2003, any employees who were not disciplined for being absent without calling in, or any employees who were not disciplined for sleeping while at work. Townsend depo. (DX 1) at

143, 185. In her summary judgment response, plaintiff attempts through Maria Preda's testimony to identify other employees who received preferential treatment. Preda identifies two employees, Teri Garnett and Don Lancaster, as Dr. Arnold's "favorites." PX 2 at 62-63, 169. She does not state, however, that Dr. Arnold failed to discipline either Garnett or Lancaster for being AWOL or for sleeping at work. The other employees identified in plaintiff's response did not receive preferential treatment and were not engaged in misconduct similar to plaintiff's.

For these reasons — failure to raise an issue of fact regarding discrimination or retaliation by Col. Biggerstaff, failure to raise a fact issue regarding pretext, and failure to identify similarly-situated employees — summary judgment will be granted on plaintiff's discrimination and retaliation claims.

## HOSTILE WORK ENVIRONMENT

Defendant argues that plaintiff cannot maintain her hostile environment claim because she cannot show that the alleged hostility was related to her protected characteristics, or was severe or pervasive.

To survive summary judgment, plaintiff must create a fact issue on each of the elements of a hostile work environment claim: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected characteristics (in this case, her race, gender, age or her prior protected activity); and (4) the harassment affected a term, condition, or privilege of her employment. Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). For the purposes of this motion, defendant concedes the first two elements of plaintiff's hostile environment claim.

In her complaint, plaintiff listed several events which she alleged comprised a hostile work

environment. These allegations of hostile work environment include the following:

- "falsely ... accus[ing] Ms. Townsend of 'committing fraud by opening another employee's mail;'"

- "defam[ing] Ms. Townsend's character [by] continuously spread[ing] rumors that Ms. Townsend came to work sloppy drunk everyday ... was incompetent at her job, and was continuously sleeping on the job;"

- "repeatedly caus[ing] false information to be placed in her personnel file;"

- "call[ing] Ms. Townsend to his office ... on numerous occasions ... to counsel her about letters sent to the General's office that were 'packed with errors;"

- requiring Plaintiff to perform work at home without compensation in exchange for her receiving leave at Christmas time, and on other occasions charging her with annual leave instead of administrative leave when she was taking care of matters away from the Office which Dr. Arnold allegedly directed her to do;

- threatening to fire Ms. Townsend if she took too much approved leave;

- insisting that Ms. Townsend report to work when she was drowsy from medication or be charged AWOL;

- asking a co-worker to spy on Ms. Townsend;

In her response to defendant's summary judgment motion, plaintiff adds that for two years she was "talked down to" and demeaned in the presence of her co-workers, and that she was screamed and yelled at for no apparent reason.

Even assuming all these events happened, they do not establish an actionable hostile environment claim because plaintiff has presented no evidence to show that the harassment she complains of was based on her protected characteristics. To be actionable, the hostile conduct must be based on the plaintiff's protected status. Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 n.2 (5th Cir. 1996).

Likewise, plaintiff has failed to show that the harassment affected a term, condition, or

privilege of her employment. For harassment to affect a "term, condition or privilege" of employment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998). Whether workplace harassment is abusive is determined by looking at all the circumstances, including frequency, severity, whether it is physically threatening or humiliating, and whether it reasonably interferes with an employee's performance. See Harris, 510 U.S. at 21-23.

What plaintiff has alleged can most objectively be characterized as criticism of her work performance and attendance. Several courts have held, however, that criticism of an employee's work performance, and even a direct threat to terminate an employee, are legally insufficient to establish a hostile work environment.  See Kang v. Board of Supervisors of La. State Univ., 75 F.App'x 974, 976 (5th Cir. 2003) (unpublished) (rejecting hostile work environment claim even though plaintiff received a poor performance evaluation, was "written up" for work performance, received a less-than-average pay raise, was not nominated for a teaching award, and was "unfairly and unjustly" criticized by his supervisor in an office meeting), cert. denied, 124 S. Ct. 1603 (2004); McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 564 (5th Cir. 1998) ("It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense."); Ramsey v. Henderson, 286 F.3d 264, 268-70 (5th Cir. 2002) (allegations that supervisor treated plaintiff more harshly than her African-American counterparts, yelled at her, gave her sharp looks, and called her a liar in front of customers and co-workers was insufficient to establish hostile

work environment); Harris-Childs v. Medco Health Solutions, Inc., 169 F.App'x 913, 917 (5th Cir. 2006) (unpublished) (threats of termination did not constitute hostile work environment).

Defendant's motion for leave to file reply brief in excess of five pages (docket no. 33) is GRANTED, and plaintiff's motion for leave to file reply to defendant's reply brief (docket no. 34) is GRANTED. Defendant's motion for summary judgment (docket no. 27) is GRANTED, and all of plaintiff's claims are DISMISSED with prejudice.

It is so ORDERED.

SIGNED this 11th day of September, 2006.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

F:\OGARCIA\SH\05-1140-sj.wpd